**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JEFFREY B. NIX EL,

     Plaintiff

     v.

TESFAYE WILLIAMS, *et al.*,

     Defendants.

Civil Action No. 15-cv-00319 (CKK)

**MEMORANDUM OPINION**
(March 30, 2016)

On March 4, 2015, Plaintiff, proceeding *pro se*, filed suit against the District of Columbia

Department of Health ("DOH"), Tesfaye Williams , and Willis R. Bradwell, Jr. ("collectively,

"Defendants"), alleging that Defendants wrongfully failed to change his daughter's surname

from "Nix" to "Nix El."

Presently before the Court is Defendants' [9] Motion to Dismiss Plaintiff's Complaint,

pursuant to Federal Rule of Civil Procedure 12(b)(6). Upon consideration of the pleadings,[1] the

relevant legal authorities, and the record as a whole, the Court GRANTS Defendants' [9] Motion

to Dismiss. The Court shall dismiss this case in its entirety.

**I. BACKGROUND**

For the purposes of the motions before the Court, the Court accepts as true the well-

pleaded allegations in Plaintiff's Complaint. The Court does "not accept as true, however, the

plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp.*

*v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014). The Court recites the

---

[1] The Court's consideration has focused on the following documents:  Plaintiff's Complaint,
Defendants' Motion to Dismiss, ECF No. [9]; Plaintiff's Opp'n to Defendants' Motion to
Dismiss, ECF No. [12]; and Defendants' Reply, ECF No. [14].

principal facts pertaining to the issues raised in the pending motions, reserving further presentation of the facts for the discussion of the individual issues below.

### A.  The Underlying Facts

Plaintiff's daughter was born on October 20, 2014 at George Washington Hospital in Washington, D.C.  Compl. ¶ 5, Ex. I.  On October 21, 2014, Plaintiff submitted a Birth Certificate worksheet to the Hospital.  *Id.* ¶ 5.  On that worksheet, Plaintiff's daughter's surname was listed as "Nix El" while both of her parents' surnames were listed as "Nix."  *Id.* Ex. I.

On October 22, 2014, Plaintiff submitted an "Affidavit to Support Designation of an Alternate Infant Surname" to the agent of hospital medical records, explaining the reason for adding the nobility title "El" to his daughter's surname.  *Id.* ¶ 20, Ex. I.  In support of the use of a surname different than that of either parent, the Affidavit requires affiants to swear that the requested surname is the surname of a "past or current relative of one of the parents whose name appears on the birth certificate or has some other clearly stated familial connection."  *Id.* Ex. I. In the space reserved for the affiant's response, Plaintiff wrote, "she is the member of the Washington de Dugdahmeadyah Mu'er M.S.T.A. family.  It is a nobility title that should be added to her last name.  Please refer to HR Resolution 75; 1933 House Page 5759."  *Id.* (sic).

On November 20, 2014, the Supervisor of DOH's Vital Records division, Tesfaye Williams, contacted Plaintiff via email, stating that he had conferred with their Deputy General Counsel, and that under D.C. Code § 7-205, DOH could not grant Plaintiff's request to add the nobility title "El" to Plaintiff's daughter's surname.  *See Id.* Ex. C.  Mr. Williams further informed Plaintiff that since the deadline for registering his daughter's birth records was one month overdo, DOH's Vital Records division would register his daughter's birth record with Plaintiff's surname "Nix" in an effort to comply with the required time frame regarding birth

registration.  *Id.*  Mr. Williams also informed Plaintiff that he could obtain a judge-issued court

order from D.C. Superior Court to change his daughter's surname to "Nix El" and provided

Plaintiff with the court's contact information.  *Id.*

Plaintiff responded to Mr. Williams' email, indicating that he did not consent to DOH's

recommendations.  *See* Compl. Ex. D.  Willis R. Bradwell , Jr., the Vital Records Division's

Registrar, replied to Plaintiff's response, indicating that Mr. Williams had accurately described

DOH's requirement to register the birth record information for Plaintiff's daughter.  *See id.* Ex D.

Mr. Bradwell reiterated that Plaintiff's recourse was to provide DOH with a court order from

D.C. Superior Court indicating that his daughter's surname should be changed from "Nix" to

"Nix El."  *See id.* Exs. E, F.  Plaintiff did not seek a court order from D.C. Superior Court.

## B.  The Instant Action

On March 4, 2015, Plaintiff filed the instant action against DOH, Mr. Williams, and Mr.

Bradwell, alleging four counts against Defendants:  (1) First Amendment Freedom of Religion

violations pursuant to 42 U.S.C. §§ 1983, 1988 ("Count I"); (2) violations of his right to contract

under Article 1 Section 10 of the U.C. Constitution and Fraud pursuant to 18 U.S.C. § 1028 (a) &

(b)(A)((ii) ("Count II"); violations of Plaintiff's rights under the Fifth and Ninth Amendments

and U.S.C. §§ 1-208/1-308 pursuant to 18 U.S.C. §§ 241, 242 ("Count III"); and, (4) violations

under the First and Fourteenth Amendments for unconstitutional prior restraint pursuant to 42

U.S.C. §§ 1983, 1988 ("Count IV").  *Id.* ¶¶ 36-48.  Plaintiff seeks declaratory relief against

Defendants and punitive damages calculated at $1 million per day for each day his daughter did

not have a birth certificate, equitable relief enjoining Defendants from depriving Plaintiff and his

daughter of their constitutional right to exercise freedom of religion, and compensatory damages

of $136 million plus costs.  *Id.* ¶¶ A-E.

On May 26, 2015, Defendants filed their Motion to Dismiss Plaintiff's complaint. *See* Defs.' Motion to Dismiss, ECF No. [9].  On June 11, 2015, Plaintiff filed his Opposition brief to Defendants' Motion to Dismiss.  *See* Pl.'s Opp'n, ECF No. [12].  Also on June 11, 2015, Plaintiff filed a one-page petition for Default Judgment, arguing that the Court should enter a default judgment against Defendants because the copy of Defendants' Motion to Dismiss served on Plaintiff was postmarked on May 27, 2015, instead of May 26, 2015—the applicable deadline under the Court's Order issued on April 28, 2015 and the Federal Rules of Civil Procedures.  *See* ECF No. [8]; Fed. R. Civ. P. 6(a)(1)(C).

The Court shall deny Plaintiff's Motion for Default Judgment.  "[D]efault judgments are not favored by modern courts." *Peak v. D.C.*, 236 F.R.D. 13, 15 (D.D.C. 2006).  Courts "strongly favor resolution of disputes on their merits," and it is "inherently unfair to use the court's power to enter judgment as a penalty for filing delays." *Id.*  Furthermore, Defendants filed their motion to dismiss with the Court on the appropriate date, May 26, 2015.  *See* Defs.' Mot. to Dismiss, ECF No. [9].  Plaintiff has not demonstrated any prejudice to the fact that Defendants mailed their motion to dismiss to Plaintiff on May 27, 2015 instead of May 26, 2015. In fact, Plaintiff filed his opposition to Defendants' motion to dismiss one day before the deadline set by the Court.  *See* ECF Nos. [8], [12].  In any event, Plaintiff is not entitled to a default judgment, as Defendants are not in default.  Before Plaintiff can seek a default judgment, Plaintiff must first obtain an order of default under Fed. R. Civ. P. 55(a).  *Id.*  In this case, no default has been issued against the Defendants, and therefore, Plaintiff is not entitled to a default judgment.  *See Peak*, 236 F.R.D. at 15.

On June 22, 2015, Defendants filed their Reply in support of Defendants' Motion to Dismiss.  On July 17, 2015, Plaintiff filed a Motion for Leave to File a Surreply because he

believes that "Defendants' reply brief contains incorrect statements that cannot go unrebutted" and because Plaintiff "aims to reinforce [his] position" on various issues in dispute.  Pl.'s Mot for Leave to File Surreply, ECF No. [28], at 3.

The Court finds that Plaintiff has not met his burden of demonstrating that "the reply filed by the moving party raised new arguments that were not included in the original motion." *Longwood Vill. V. Ashcroft*, 157 F. Supp. 2d 61, 68 n.3 (D.D.C. 2011).  The purpose of a surreply is to enable the non-movant to contest matters presented for the first time in the opposing party's reply.  *See Lewis v. Rumsfeld*, 154 F. Supp. 2d 56, 61 (D.D.C. 2001).  A surreply may not be used simply to correct an "alleged mischaracterization," *see id.*, or to reiterate arguments already made, *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 113 (D.D.C. 2002).  Here, Defendants' reply does not assert new facts or raise new arguments that were not included in the original motion.  Therefore, the Court finds that Plaintiff's proposed surreply would be of no assistance to the resolution of the pending Motion to Dismiss.  Accordingly, the Court, in an exercise of its discretion, shall deny Plaintiff's motion for leave to file a surreply.  *See Akers v. Beal Bank,* 760 F.Supp.2d 1, 2 (D.D.C.2011) ("[T]he decision to grant or deny leave to file a surreply is committed to the sound discretion of the court.").

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face."

5

*Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Although *pro se* litigants are generally "held to less stringent standards than formal pleadings drafted by lawyers, they must still provide more than conclusory allegations to survive a motion to dismiss."  *Lewis v. Bayh*, 577 F. Supp. 2d 47, 56 (D.D.C.2008) (internal citations omitted).

## III. DISCUSSION

At the outset, the Court agrees with Defendants that Defendants Tesfaye Williams and Willis R. Bradwell are sued in their official capacities, *see* Compl. ¶ 7, and therefore are not proper parties to this suit.  While individual capacity suits seek to impose personal liability upon a government official for actions taken under color of state law, official capacity suits "generally represent only another way of pleading an action against an entity of which the officer is an agent."  *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 690 n.55 (1978).  Accordingly, the suit against Defendants Williams and Bradwell functions as a suit against the District of Columbia.  *See, e.g., Arnold v. Moore*, 980 F. Supp. 28, 36 (D.D.C. 1997) ("It is well settled that if the plaintiff is suing the defendants in their official capacities, the suit is to be treated as a suit against the District of Columbia.").  Furthermore, even if Plaintiff's suit could be considered as a suit against Mr. Williams and Mr. Bradwell personally, both named Defendants would be entitled to qualified immunity because, as discussed below, they did not violate Plaintiff's established constitutional rights of which a reasonable person would have known.  *See*

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Accordingly, the Court shall dismiss Plaintiff's claims against Defendants Williams and Bradwell in their individual capacities.[2]

The Court also agrees with Defendants that DOH, as a subordinate agency within the District of Columbia, is not a suable entity.  *See* D.C. Code § 1-603.01(17)(MM); *see also Arnold*, 980 F. Supp. at 36 ("Government agencies of the District of Columbia are not suable entities, or *non sui juris*); *Trifax Corp v. District of Columbia*, 53 F. Supp. 2d 20, 26 (D.D.C. 1999) (dismissing on non sui juris grounds the District's Office of the Inspector General, the Department of Health, the Department of Administrative Services, and the Department of Human Services).  Accordingly, the Court shall dismiss Plaintiff's claims against Defendant DOH.[3]

Having found that the named Defendants are not proper parties to this action, the Court shall consider whether it would be futile to substitute the District of Columbia as a Defendant. The Court concludes that it would be futile, because Plaintiff's Complaint fails to state a claim upon which relief can be granted.

## A.  Standing

Defendants' Motion to Dismiss includes a cursory argument that Plaintiff lacks standing to bring his constitutional claims because the constitutional rights at issue are those of Plaintiff's daughter, not those of Plaintiff.  *See* Def.'s Mot to Dismiss at 1, 9.  Defendants contend that Plaintiff has not personally suffered an injury as a result of Defendants' decision to decline Plaintiff's request to change his daughter's name.  *See* Def.'s Mot to Dismiss at 9.  Defendants

---

[2] The Court also notes that Defendants Williams and Breadwell have not been properly served with process, as Plaintiff has allegedly attempted to serve Defendants by certified mail sent to Defendants' work address.  *See* Def.'s Motion to Dismiss at 1 n.1.

[3] Although omitted from the case caption, the District of Columbia Department of Health Vital Records Division is listed as a party within the Complaint.  *See* Compl. ¶ 6.  To the extent that Plaintiff is suing the Vital Records Division within the Department of Health, Plaintiff's claims against the Vital Records Division shall also be dismissed for the reasons described above.

also assert that they "could not have known at the time they declined to alter [Plaintiff]'s daughter's surname that they were violating [Plaintiff]'s clearly established constitutional rights." *See id.*

Plaintiff's Opposition brief appears to respond to Defendants' argument by asserting—rather inexplicably—that Article III, Section 2 confers him standing by virtue of his status as a Public Minister of the Moorish Science Temple of America.  See Pl.'s Opp'n at 10.

Nevertheless, based on the record before the Court, it appears that Plaintiff is asserting that his own legal rights have been violated, and that he has standing to bring this suit. Specifically, Plaintiff asserts that because he was unable to add "El" to his daughter's birth certificate, he was unable to practice his religious beliefs and to engage in religious rituals under the Free Exercise Clause of the First Amendment.  *See* Pl.'s Opp'n at 4 n.2.  Such an injury appears to be sufficient to confer Plaintiff with standing to allege a violation of his rights.  *See Ass'n of Data Processing Serv. Organizations, Inc. v. Camp*, 397 U.S. 150, 154 (1970) ("A person or a family may have a spiritual stake in First Amendment values sufficient to give standing to raise issues concerning the Establishment Clause and the Free Exercise Clause."); *see also Allen v. Hickel*, 424 F.2d 944, 946-47 (D.C. Cir. 1970) ("The [Supreme] Court made it particularly clear that there is a readiness to find standing conferred by non-economic values in order to consider issues concerning the Establishment Clause and the Free Exercise Clause.").

Furthermore, Defendants' argument that Plaintiff lacks standing to bring his constitutional claims because the constitutional rights at issue are those of Plaintiff's daughter, not those of Plaintiff, is unavailing.  *See* Def.'s Mot to Dismiss at 1, 9.  The Supreme Court has long recognized that parents have standing to bring a claim under the Free Exercise Clause of the First Amendment with respect to the right of *parents* to exercise the parents' religious beliefs in

connection with decisions affecting their children.  *See, e.g.*, *Wisconsin v. Yoder*, 406 U.S. 205, 219 (1972) (recognizing that the First Amendment protects the "traditional interest of parents with respect to the religious upbringing of their children").

Accordingly, the Court finds that Plaintiff has standing to bring his claims, and the Court shall proceed to the merits of Plaintiff's claims.

### B.  The District is Not Vicariously Liable under 42 U.S.C. § 1983 for Constitutional Violations Committed by District Employees.

As a preliminary matter, Plaintiff claims that Defendants violated his constitutional rights under the First Amendment pursuant to 42 U.S.C. §§ 1983, 1988[4] ("Count I"); the Fifth and Ninth Amendments pursuant to 18 U.S.C. §§ 241, 242[5] ("Count III"); and the First and Fourteenth Amendments pursuant to 42 U.S.C. §§ 1983, 1988 ("Count IV").  *See* Compl. ¶¶ 36-48  However, it is "well settled that a municipality like the District of Columbia is not liable for the unconstitutional conduct of its employees based on *respondeat superior* or vicarious liability; it can be held liable only if it maintains a policy that causes a constitutional violation."  *Powers-Bunce v. D.C.*, 479 F. Supp. 2d 146, 155 (D.D.C. 2007) (dismissing constitutional claims brought under 42 U.S.C. § 1983 against the District of Columbia because it is "incontrovertible" under Supreme Court and D.C. Circuit precedent that "there is no vicarious liability for constitutional violations.").  Here, Plaintiff cites no custom or policy of the District that might establish the District's liability under Section 1983.  *See Feirson v. D.C.*, 506 F.3d 1063, 1066 (D.C. Cir.

---

[4] Plaintiff improperly invokes 42 U.S.C. § 1988 as a basis for relief.  42 U.S.C. § 1988 is an attorney-fee statute and not an enabling statute.  *See* 42 U.S.C. § 1988.

[5] Plaintiff improperly invokes 18 U.S.C. §§ 241 and 242 as bases for relief regarding his allegations that Defendants have violated his "Right to Contract" under Article 1 Section 10.  *See* Compl. ¶ 39-41.  The cited provisions are criminal statutes and not enabling statutes.  *See* 18 U.S.C. §§ 241, 242.  Despite Plaintiff's arguments to the contrary, *see* Pl.'s Opp'n at 8, private individuals may not bring actions under these criminal statutes, *see Crosby v. Catret*, 308 F. App'x 453 (D.C. Cir. 2009).

2007) ("To impose liability on the District under 42 U.S.C. § 1983, [a plaintiff] must show 'not only a violation of his rights under the Constitution or federal law, but also that the [District's] custom or policy caused the violation.' ") (quoting *Warren v. District of Columbia*, 353 F.3d 36, 38 (D.C. Cir. 2004).

Accordingly, to the extent that Plaintiff attempts to hold the District liable for constitutional violations based on the actions of Mr. Williams and Mr. Bradwell, Plaintiff's constitutional claims fail as a matter of law.[6]

### C. Defendants did not violate Plaintiff's Statutory or Constitutional Rights.

Plaintiff alleges that Defendants violated his right to name his daughter with the nobility title "El" under the First, Fifth, Ninth, and Fourteenth Amendment (Counts I, III, IV) and his right to contract pursuant to Article 1 Section 10 of the U.S. Constitution (Count II). *See* Compl. ¶¶ 36-48; Pl.'s Opp. at 4. In essence, Plaintiff contends that Defendants Williams and Bradwell improperly declined to register the birth certificate listing Plaintiff's daughter with a surname different from both of her parents and declined to accept an Affidavit that failed to establish that the chosen surname had a clear familial connection, as required by law. *See* Pl.'s Opp'n at 3-4, 6-7.

The applicable statutory provision in this case is D.C. Code § 7-205, which states that "[a] certificate of birth for each live birth which occurs in the District shall be filed as directed by the Registrar, within 5 days after such birth, and shall be registered if it has been completed and

---

[6] Plaintiff attempts to argue that the District is liable for the constitutional violations alleged to have been committed by Mr. Williams and Mr. Bradwell because they took an oath of office pursuant to D.C. Code § 1-604.08. Plaintiff cites no viable authority in support of this proposition, and the Court finds it to be entirely without merit.

filed in accordance with this chapter." D.C. Code § 7-205(a). Section 7-205 further delineates

certain rules for preparing and filing a birth certificate, including that:

> The surname of the child shall be the surname of a parent whose name appears on the child's birth certificate, or both surnames recorded in any order or in hyphenated or unhyphenated form, or any surname to which either parent has a familial connection. If the chosen surname is not that of a parent, or a combination of all or part of both surnames, either or both parents shall provide an affidavit stating that the chosen surname was or is the surname of a past or current relative or has some other clearly stated familial connection. Submission of an affidavit containing false information shall be punishable under § 7-225.

D.C. Code § 7-205(e)(5).

Here, the Birth Certificate worksheet submitted by Plaintiff indicated that the surname for

Plaintiff's daughter was to be "Nix El," while the surname for both parents was simply "Nix."

*Id.* Ex. I. Because the chosen surname was not that of either parent, Plaintiff was required to

provide "an affidavit stating that the chosen surname was or is the surname of a past or current

relative or has some other clearly stated familial connection." D.C. Code § 7-205(e)(5).

However, Plaintiff's affidavit simply indicated that his daughter "is the member of the

Washington de Dugdahmeadyah Mu'er M.S.T.A. family. It is a nobility title that should be

added to her last name. Please refer to HR Resolution 75; 1933 House Page 5759." Compl. Ex.

I. Defendants reasonably concluded that Plaintiff did not provide information that the daughter's

chosen surname, "Nix El," was the surname of a past or current relative, or that the chosen

surname had a "*clearly stated* familial connection." D.C. Code § 7-205(e)(5) (emphasis added).

Plaintiff also contends that the birth certificate was improperly delayed under D.C. Code

§ 7-207. *See* Pl.'s Opp'n at 6. Section 7-207 provides, in relevant part:

> (a) A certificate of birth may be filed after the 5-day period specified in § 7-205 if the person or institution filing the certificate meets the filing and registration requirements imposed by the section. The Registrar shall prescribe by regulation evidentiary requirements to substantiate facts of birth for those certificates filed and registered after the 5-day period;

(d)(1) When an applicant does not submit the minimum documentation required in the regulations for delayed registration or when the Registrar has reasonable cause to question the validity or adequacy of the applicant's sworn statement or the documentary evidence, and if the deficiencies are not corrected, *the Registrar shall not register the delayed certificate of birth. The Registrar shall state in writing to the applicant the reason for this action*.  Upon the Registrar's refusal to register, the registrant shall have a cause of action in the Court to establish the date and place of birth and the parentage of the person whose birth is to be registered.  *The Registrar shall give the registrant written notice of this right*.

D.C. Code § 7-207(a), (d)(1).

Here, Defendants not only followed the applicable statutory procedures after determining that Plaintiff's Affidavit was legally deficient, but they attempted to assist Plaintiff by facilitating his request through the appropriate procedures.  Both Mr. Williams and Mr. Bradwell explained to Plaintiff why they could not register the surname as requested by Plaintiff, informed Plaintiff of his recourse in D.C. Superior Court, and attempted to put Plaintiff in touch with the appropriate personnel at D.C. Superior Court.  *See* Compl. Exs. C, D, E.  None of Defendants' actions amount to the statutory and constitutional violations alleged by Plaintiff.  Plaintiff's conclusory allegations that Defendants "violated [his] right to free religion that is tied to his nationality for his daughter"; "worked together under collusion to create the birth certificate without sending Plaintiff a new application with a new signature"; "deprived Plaintiff his right to contract thus falsely registering his daughter without his permission"; "violated Plaintiff (sic) liberties and rights"; and acted "with callous disregard for Plaintiff's known statutory and constitutional rights" are the very type of "naked assertions" that the Supreme Court found incapable of surviving a Rule 12(b)(6) motion to dismiss.  *Twombly*, 550 U.S. at 557; *see also Hall-El v. United States*, No. 1:11CV1037, 2013 WL 1346621, at *1 (M.D.N.C. Apr. 3, 2013) *report and recommendation adopted sub nom. El v. Pate*, No. 1:11CV1037, 2013 WL 5213428 (M.D.N.C. Sept. 16, 2013) (finding that plaintiff failed to state a claim against the Social

Security Administration when plaintiff alleged that the Administration's denial of his request to add "el" to his name on a social security card violated his religious beliefs as a Moorish-American).[7]

Accordingly, the Court finds that Plaintiff has failed to plead sufficient facts that it would be plausible to conclude that the District of Columbia has violated Plaintiff's statutory or constitutional rights.[8]

## IV. CONCLUSION

For the reasons set forth above, the Court shall grant Defendants' [9] Motion to Dismiss, and the Court shall dismiss Plaintiffs' claims against Defendants.  In addition, the Court shall deny Plaintiff's [11] Motion for Default Judgment and deny Plaintiff's [18] Motion for Leave to File a Surreply.   This action shall be dismissed in its entirety.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

---

[7] In support of his First Amendment claims in Count I and Count IV, Plaintiff asserts that a Pennsylvania Congressional Record Resolution relating to the Moorish-American Society of Philadelphia provides him with the right to affix a nobility title to his daughter's name, regardless of whether Plaintiff complies with the proper procedures for registering his daughter's birth certificate.  Plaintiff inexplicably contends that the Pennsylvania resolution is a federal law that supersedes D.C. law.  Compl. ¶ 32, Ex. D.  Plaintiff is incorrect.  The cited Pennsylvania resolution is not a federal law, and it do not supersede D.C. laws outlining the proper procedures for registering birth certificates.  *See, e.g.*, *Parker v. Brown*, 317 U.S. 341, 360 (U.S. 1943).

[8] The Court would note that the Birth Certificate worksheet administered by the District includes lines for the first name, middle name, last name, and suffix of both parents and the baby.  *See* Compl. Ex. I.  As noted above, in filling out his daughter's Birth Certificate worksheet, Plaintiff indicated that the Mother's current legal surname is "Nix" and the Father's current legal surname is "Nix," but that the baby's surname should be "Nix El."  *See id.*  However, it appears to the Court that "El," when used as a title of nobility, is a suffix and would not be considered part of one's surname.  *See, e.g.*, *Hall-El,* 2013 WL 1346621, at *1 (describing the term, "El," as a suffix that reflects one's Moorish nationality).  Accordingly, it appears to the Court that Plaintiff could have listed on the Birth Certificate worksheet the nobility title, "El," as a suffix for himself, his wife, and the baby.  However, Plaintiff elected not to do so, and instead listed his baby's surname as "Nix El," despite listing his and his wife's surname simply as "Nix."